**NORMAN'S HERITAGE REAL ESTATE COMPANY, d/b/a Realty World—Norman's Heritage Real Estate Company, Plaintiff-Appellant,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant-Appellee.**

No. 82–1730.

United States Court of Appeals, Tenth Circuit.

Jan. 27, 1984.

Rehearing Denied March 12, 1984.

Roger O. Housley of Pence & Housley, Norman, Okl., for plaintiff-appellant.

Clarence P. Green of Green, James, Williams & Elliott, Oklahoma City, Okl., for defendant-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate records, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See:* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). This case is therefore submitted without oral argument.

Norman's Heritage Real Estate Company, d/b/a Realty World—Norman's Heritage Real Estate Company, an Oklahoma corporation (Norman's Heritage) appeals from an order of the district court granting defendant Aetna Casualty and Surety Company's (Aetna) motion for judgment notwithstanding the verdict, and denying Norman's Heritage motion to tax costs and attorneys fees. The suit was removed from state court, on diversity grounds, to federal district court by Aetna, a Connecticut corporation authorized to do business in Oklahoma.

This action arose from a dispute involving an insurance policy issued by Aetna to Norman's Heritage. The policy was issued March 25, 1980, for a one-year period for a total premium of $150.00. The policy included coverage of $9,000.00 for damage or loss to office furniture, fixtures and business personal property occasioned by fire, lightning and other specified perils, and loss

of business earnings resulting from the interruption of business. The building that Norman's Heritage rented in Norman, Oklahoma, was not covered by the policy.

On August 4, 1980, a fire started in a building adjacent to Norman's Heritage's rented building. The fire, smoke, and water spread, causing the near total loss of Norman's Heritage's business property including business records, office equipment, carpet, etc. Two days after the fire, an Aetna adjuster made an evaluation of the loss-damage. There was no dispute relative to the policy's $9,000.00 coverage for business property. (Norman's Heritage's actual loss of business personal property was approximately $16,000.00.) A dispute did arise, however, relative to the policy's coverage for loss of business earnings from interruption of business. Thereafter, Norman's Heritage initiated the present action.

In its first cause of action, it alleged compensable losses under its insurance contract of $9,000.00 in business personal property (uncontroverted), relocation costs and expenses of $16,194.57, and loss of business earnings of $51,160.32 from interruption of business, for total damages of $76,804.89. Norman's Heritage also submitted a claim for interest, attorney's fees and costs of the action. Norman's Heritage's Second Cause of Action alleged that Aetna had acted in bad faith and had willfully and intentionally failed to pay its valid claim, all in breach of its contractual obligation of good faith and fair dealing. Norman's Heritage thus prayed for a punitive damage award of $100,000.00.

At trial, Norman's Heritage presented evidence in support of its business loss of earnings claim through the testimony of Nevada Anderson, Jamie O'Neil and Gene McKown, who testified that the real estate market was on the climb for the months of August and September. Norman's Heritage's accountant presented the business loss of earnings figures, establishing loss of earnings for August of $22,485.00 and for September in the amount of $25,591.00, for a total of $48,000.00. Norman's Heritage also presented evidence in support

of its punitive damages claim of $100,000.00, predicated on the contention that Aetna did not conscientiously aid and assist in settlement of the claim but, instead, obstructed settlement.

Aetna's claim consultant, Mr. Marvin Childs, who had been in the claims business for twenty-five years, computed the business interruption claim of Norman's Heritage, which, under the policy, provided a maximum twelve-months coverage. On the agreed business interruption period from August 4, 1980, to September 30, 1980, and from profit and loss statements of Norman's Heritage for the period January through November, 1980, Childs projected gross income figures for the months of August and September based on real estate closings and commissions paid for the first nine months of sales in 1980. On this basis, Childs testified that Aetna's business earnings loss obligation to Norman's Heritage equaled $8,089.00. Aetna denied that it had proceeded in bad faith or had obstructed settlement in negotiating with Norman's Heritage. Aetna pointed to the evidence in support of its contention that Norman's Heritage refused to submit meaningful business records or accountings. Also, Aetna emphasized that Norman's Heritage's accountant, Jane Blaylock, for unexplained reasons, did not testify.

Counsel for Norman's Heritage objected to the court's refusal to tender an instruction allowing damages for relocation expenses. The court denied such damages by Instruction 7. Counsel for Aetna also objected to the giving of Instruction 8, the punitive damages instruction, on the grounds that (a) it is not bad faith to deny a claim which included a money claim for relocation expense, which is not covered under the policy, (b) there is total lack of evidence of malice, fraud, or oppression, and (c) no claim has been made or proof offered of compensatory damages. [R., Vol. VI, p. 287].

A verdict was returned in favor of Norman's Heritage and against Aetna, awarding (a) $9,000.00 for damages to business property (contents), (b) $22,500.00 for busi-

ness interruption and (c) $10,000.00 for punitive damages. Subsequently, the district court granted Aetna's Motion for Judgment Notwithstanding the Verdict and set aside the punitive damage award on the ground that there was not sufficient evidence of bad faith on the part of Aetna to justify submission of the question of bad faith and punitive damages to the jury. The district court also denied Norman's Heritage's Motion to Tax Costs and Attorney's Fees based upon 36 O.S.A. § 3629 B (Supp.1971), on the ground that this statute is unconstitutional. [R., Vol. I, pp. 85, 86].

On appeal, Norman's Heritage contends that the district court erred (1) in granting Aetna's motion for judgment notwithstanding the verdict and striking the jury's verdict for $10,000.00 in punitive damages, (2) in ruling that 36 O.S.A. § 3629 B is unconstitutional and, thus, no attorney's fees can be awarded to Norman's Heritage, and (3) in failing to award Norman's Heritage attorney's fees based upon the jury's finding of bad faith on the part of Aetna.

## I.

Norman's Heritage contends that the district court erred in granting Aetna's motion for judgment notwithstanding the verdict and thereby striking the jury's verdict of $10,000.00 in punitive damages against Aetna.

Under the law of Oklahoma, punitive damages may be awarded in addition to actual or compensatory damages only upon proof that a defendant has been "guilty of oppression, fraud or malice, actual or presumed." 23 O.S.A. § 9 (1971). In this case, the jury awarded Norman's Heritage actual damages on the first cause of action based on the insurance policy (contract), i.e., $9,000.00 for loss of business property (contents) and $22,500.00 for business interruption, or a total of $31,500.00 in actual damages in contract. The jury also awarded Norman's Heritage the sum of $10,000.00 in tort, representing that which the jury believed to be Aetna's bad faith in dealing with Norman's Heritage on its claims.

Punitive damages, by definition, are not authorized for the purpose of compensating a party, but, rather, to punish a tortfeasor whose action is found to be malicious, reprehensible, and intentional. 5 *Corbin on Contracts* § 1077, (1964). The primary purpose of the award of punitive damages is to punish the wrongdoer and to deter others from acting in the same way as the wrongdoer.

The Oklahoma Supreme Court in *Davidson v. First State Bank & Trust Co.,* 559 P.2d 1228 (Okl.1977), reiterated the rule it relied on in *Z.D. Howard Company v. Cartwright,* 537 P.2d 345 (Okl.1975). In *Howard* the court said, *inter alia:*

> As a general rule, damages for breach of contract are limited to the pecuniary loss sustained, and exemplary or punitive damages are not recoverable. *This rule is not applicable, however, in those exceptional instances where the breach amounts to an independent, willful tort.* In such case punitive damages may be recovered under proper allegation.
>
> The facts in the present case are especially adaptable to the exception above noted. For it was the alleged false misrepresentation of the seller which induced the buyers to enter into the contract for the sale of the automobile. In falsely representing the car to be a new one, when in fact it was not, the seller fraudulently committed a tort, *independent of their subsequent contract and agreement.*

537 P.2d at p. 347 (emphasis added). *See also* 5 *Corbin on Contracts* § 1077, (1964).

In *Burton v. Juzwik,* 524 P.2d 16 (Okl. 1974), the action was one for actual and punitive damages allegedly sustained by reason of defendant's breach of an oral trust agreement. The court observed that in order for plaintiff's claim for punitive damages to prevail, the action must come within the purview of 23 O.S.A. § 9, *supra.* The court rejected plaintiff's claim that he was entitled to assert a claim for punitive damages under the above statute. The court said, *inter alia:*

> 23 O.S. 1971 § 9, has no force or effect, if in a cause of action for punitive damages

arising out of breach of contract, plaintiff merely alleges that the breach "was done falsely, fraudulently, willfully, and maliciously with the intent to defraud . . . ."

We hold that the gravamen of plaintiff's action is for breach of an obligation arising from contract and the trial court correctly sustained defendant's motion to strike from plaintiff's pleadings his allegations relating to punitive damages.

524 P.2d at pp. 19, 20. *See also Gilbreath v. Phillips Petroleum Co.,* 526 F.Supp. 657 (W.D.Okl.1980), for the holding that under the law of Oklahoma, a claim for punitive damages does not constitute a separate and independent cause of action, but is only incidental or collateral to a claim for actual damages.

Norman's Heritage has placed substantial reliance on the Oklahoma Supreme Court decision in *Christian v. American Home Assurance Company,* 577 P.2d 899 (Okl.1978), in support of the jury's punitive damage award. To be sure, the *Christian* court did hold that an insurance company may be liable *in tort* for violating an implied duty to deal fairly and in good faith with its insured. The court reiterated the rule that an insurer has an implied duty to deal "fairly and act in good faith with its insured and that the violation of this duty gives rise to an *action in tort for which consequential and, in a proper case, punitive, damages may be sought.*" 577 P.2d at p. 904, [emphasis supplied]. *Christian* quoted and relied upon *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 484, 510 P.2d 1032, 1036 (1973), as follows:

> [T]his duty, the breach of which sounds in both contract and tort, is imposed because "[t]here is an implied covenant of good faith dealing in every contract [including insurance policies] that neither party will do anything which will injure the right of the other to receive benefits of the agreement" . . . . It is manifest . . . that in every insurance contract there is an implied covenant of good faith and fair dealing . . . . Accordingly, when the insurer unreasonably withholds payment of the claim of its insured, it is subject to liability in tort.

Norman's Heritage argues that Aetna's failure to pay the uncontraverted $9,000.00 representing business property loss was in direct contravention to the court's admonition in *Christian,* to-wit:

> This statutory duty imposed upon insurance companies to pay claims immediately, recognizes that a substantial part of the right purchased by an insured is the right to receive the policy benefits promptly. Unwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy.

577 P.2d at p. 903.

Further, Norman's Heritage relies on the language in 36 O.S.A. § 3629 B which creates a duty on the part of an insurer, following receipt of a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety days after the receipt of that proof of loss. Norman's Heritage contends that the evidence established that Aetna unreasonably delayed action on the claim and then, in bad faith, denied it.

Aetna counters initially with the fact that Norman's Heritage submitted its claim in two documents. The first claimed business property loss of $9,000.00 and business interruption loss of $34,859.00. The second, or amended claim, included the $9,000.00 business property loss, an increase of the business interruption loss to $51,610.32 and a new claim of relocation expense of $16,194.57. Aetna admitted liability for the $9,000.00 business property loss claim, admitted coverage for the business interruption claim but disputed the amount thereof, and contended lack of coverage and liability for the relocation expense claim. [R., Vol. I, Answer, pp. 10, 11]. Significantly, as a matter of record before the trial court, Aetna specifically alleged in paragraph five 5 of its Answer that: "Defendant admits that plaintiff's loss of business property was greater than $9,000.00 and that the insurance limit for this item was $9,000.00. Defendant has repeatedly offered to pay plaintiff for this item of the loss without preju-

dice to the remainder of plaintiff's claim, but said offer has been refused." [R., Vol. I, p. 10]. The Answer was filed July 23, 1981. Aetna submitted a written offer to settle the contents loss on April 17, 1981. As we have previously observed, the court struck the relocation expense claim of $16,-194.57. That is not challenged by Norman's Heritage on appeal. In terms of bad faith this is significant, just as is the fact that although Norman's Heritage claimed business interruption damages of $51,610.32, the jury awarded only $22,500.00. The Judgment awarding Norman's Heritage the $9,000.00 and the $22,500.00 has been paid by Aetna by Partial Release of Judgment. [R., Vol. I, p. 90].

■ Aetna argues that *Christian v. American Home Assurance Co., supra,* holds that an insurer is liable in tort for a willful, malicious, bad faith refusal to pay *only a valid claim.* We agree. The language of that opinion is clear in this regard. *See* 577 P.2d at p. 900. *Christian* recognized that valid, legitimate disputes arise between an insurer and its insured involving such matters:

> as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

577 P.2d at p. 905.

■ Aetna also contends that Oklahoma law provides that if a contract is breached tortiously, the injured party has an election to waive the breach and sue for the tort, citing *Hall Jones Oil Corporation v. Claro,* 459 P.2d 858 (Okl.1969); *Storck v. Cities Service Gas Co.,* 634 P.2d 1319 (Okl.App. 1981); *Oklahoma Natural Gas Co. v. Pack,* 97 P.2d 768 (Okl.1939); and *Colby v. Daniels,* 125 Okl. 202, 257 P. 298 (1927). We agree and note that Norman's Heritage made no such election.

■ There is nothing in this record justifying the invocation and/or finding of the "exceptional instances" referred to in *Z.D. Howard Company v. Cartwright, supra,* that there is a breach amounting to an independent, willful tort. Thus, proof of the fact of a breach of contract, standing alone, cannot support an award of punitive damages. Punitive damages cannot stand without at least a nominal compensatory award under a tort cause of action. 67 A.L.R.2d 943 (1958). There was total failure in that respect in the instant case.

■ The district court did not err in granting Aetna's Motion for Judgment Notwithstanding the Verdict in striking the jury's award of punitive damages of $10,-000.00. We agree with the district court's finding that there was insufficient evidence of Aetna's bad faith to justify any award of punitive damages. There is no evidence of malice, willfulness, flagrant disregard or fraud. The purpose of awarding damages in breach of contract actions is compensation and not punishment; and only in exceptional instances, involving a particularly aggravated, willful breach have any departures been made from the general rule that punitive damages are not recoverable for a breach of contract. *Restatement* (second) of Contracts § 355.

In addition, however, and in accord with the cited authorities, we hold that the punitive damage verdict was properly set aside because there was no award of actual or compensatory damages under Norman's Heritage's Second Cause of Action sounding in tort. Thus, under Oklahoma law, Norman's Heritage was not entitled to punitive damages. *See Davidson v. First State Bank & Trust Co., supra; Z.D. Howard Company v. Cartwright, supra; Burton v. Juzwik, supra; Gilbreath v. Phillips Petroleum Co., supra; Fischer Construction Co. v. Fireman's Fund Insurance Co.,* 420 F.2d 271 (10th Cir.1969); *Eckels v. Traverse,* 362 P.2d 680 (Okl.1961); *Fuller v. Neundorf,* 278 P.2d 836 (Okl.1955).

II.

■ Norman's Heritage contends that the district court erred in ruling that the

award of attorneys fees to the prevailing party is unconstitutional under 36 O.S.A. § 3629 B, or, in the alternative that attorney's fees are warranted under the bad faith exception to the "American Rule."

The trial court, in denying Norman's Heritage's claim for attorney fees said:

With reference to plaintiff's motion to tax costs and attorneys fees, that portion directed to the allowance of attorney fees is based upon 36 O.S., Supp. § 3629B, which provides that attorney fees shall be awarded to the prevailing party in insurance policy litigation, and also plaintiff's contention that attorney fees are allowable as compensatory damages against a non-prevailing party who acted in bad faith.

The statute upon which plaintiff relies has been declared unconstitutional by Honorable Ralph G. Thompson, United States District Judge, in *First National Bank and Trust Co. v. Transamerica Insurance Co.,* CIV–79–1358–T W.D.Okl. The court adopts that ruling and holds that plaintiff is not entitled to recover an attorney fee. Plaintiff's contention that attorney fees are allowable against a non-prevailing party who is guilty of bad faith is not well taken and is denied.

[R., Vol. I, pp. 85, 86].

Both parties agree that this Court's decision in Cases Nos. 81–2355 and 81–2432, *The First National Bank and Trust Company of El Reno, a National Banking Institution v. Transamerica Insurance Company, a Corporation,* appealed from the Western District of Oklahoma, under CIV–79–1358–T controls, except that Norman's Heritage would nevertheless rely upon the exception to the "American Rule." This Court decided *Nos. 81–2355 and 81–2432* by "Order and Judgment" entered and filed November 8, 1983. In pertinent part we there said:

The Oklahoma courts have since upheld the attorney fee statute originally challenged by Transamerica and thought to be invalid by the trial court. *Pierce v. The Western Casualty and Surety Co.,* 54 Okla.B.J. 1874 (Ct.App.). On remand the trial court should determine and award attorney fees for the action brought by the Bank on the bond in the trial court and on this appeal.

[Page 4 of Slip, Order and Judgment].

We thus conclude that the trial court erred in denying Norman's Heritage prayer for award of reasonable attorney fees pursuant to 36 O.S.A. § 3629 B. On remand, the district court should conduct such proceedings necessary to determine the reasonableness of said fees and to award same. In all other respects, the judgment of the trial court is affirmed.